508 So.2d 677 (1987)
Brenda Castille HOBBS
v.
William Monroe HOBBS.
No. 56793.
Supreme Court of Mississippi.
June 3, 1987.
*678 H. Fariss Crisler, III, Jackson, for appellant.
Charles O. Moore, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ANDERSON, JJ.
HAWKINS, Presiding Justice, for the Court:
Brenda Castille Hobbs appeals from a decree of the chancery court of the First Judicial District of Hinds County modifying an original December, 1982, custody decree entered by that court.
Because there is a serious question whether the chancery court had jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), both because Brenda had lived in the State of Louisiana with the child for at least two years prior to institution of the modification proceedings by her divorced husband, and also a Louisiana court had assumed jurisdiction and entered a separate order modifying custody, we remand to the chancery court for a determination whether it has jurisdiction.

FACTS
William Monroe Hobbs and Brenda Castille Hobbs were married February 15, 1975, and had one child, Castille Elizabeth Hobbs, born January 28, 1980. They separated May 16, 1982, while they resided in Jackson. Brenda then moved to her childhood home in Breaux Bridge, Louisiana. On December 22, 1982, the chancery court for the 1st Judicial District of Hinds County granted the couple a divorce based upon irreconcilable differences and incorporated in its decree a property settlement and custody agreement executed by Brenda and William on December 13.
On November 30, 1984, Brenda's Louisiana attorney mailed the clerk of the St. Martin Parish Court a petition to modify the custody decree of the Hinds County Chancery Court. Attached to the petition were copies of the divorce decree, property settlement, a proposed order of custody change, and the affidavit of Brenda made pursuant to L.S.A.-R.S. 13:1708 of the Louisiana Code. The affidavit, executed November 27, 1984, alleges that Castille Elizabeth had resided with Brenda in Louisiana since August 1, 1982. It also alleges Brenda had no information of another custody proceeding regarding the child in any other state.
The St. Martin Parish clerk received these documents on December 3, 1984, and sent them by certified mail to William who was living in Bay St. Louis. The record in this cause does not show whether or not William ever received the mailed process.
On January 7, 1985, Brenda's attorney wrote the St. Martin Parish clerk enclosing a motion for default, along with a proposed *679 order to be presented to the district judge. On January 11 a district judge of St. Martin Parish for the 16th Judicial District of Louisiana entered a preliminary default for failure to answer under L.S.A.-R.S. 13:1704, in favor of Brenda.
On January 22, 1985, Hon. Robert E. Johnson, a district judge of that district, entered an order modifying the original Hinds County Chancery Court decree.
Running along a parallel track, on November 30, 1984, William filed a "Motion for Modification of Final Judgment of Divorce" in the chancery court of the 1st Judicial District of Hinds County. The record does not reveal whether process was had or even attempted on Brenda. On December 20 William also filed a motion in the chancery court, and secured an order the same day permitting him to deposit the monthly child support payments in a William Monroe Hobbs trust account.
On January 8, 1985, William filed a motion to find Brenda in contempt of court for violating his visitation privileges under the original custody agreement. The same day William mailed Brenda's Louisiana attorney notice that he would bring the contempt motion for hearing before the Mississippi chancellor on January 24, 1985.
On January 30 Brenda, represented by a Jackson attorney, answered William's original motion for modification of the decree, alleging as one of her defenses that the chancery court did not have jurisdiction over the parties. She also asserted a "counter motion" which asked the chancery court to curtail visitation granted William in the first decree, and only permit him to see the child in the presence of one or both of his parents. Brenda's counsel failed to inform the chancellor of the Louisiana proceedings in either the answer to modification motion or the counter motion.
Brenda also filed interrogatories to William on January 30, and on the same date William likewise propounded interrogatories to Brenda. On January 31 the chancellor set February 6 as a hearing date on the contempt motion.
On February 6 William filed an "Answer to Motion to Transfer Jurisdiction," and alleged that neither Brenda nor her attorney had complied with Miss. Code Ann. § 93-23-11; -15; -17 and -43. On the same date he filed an "Answer to Counter Motion for Modification of Final Judgment for Divorce."
On February 7 Brenda filed a "Motion to Transfer Jurisdiction," in the chancery court alleging what had transpired in the court proceedings in Louisiana, and attaching a copy of the court file from that court.
The chancellor conducted a hearing on the same day. At the outset of the hearing the chancellor made the following ruling:
BY THE COURT:
I guess the first thing we ought to do is overrule the Motion to Transfer Jurisdiction. At the time this divorce action was filed it is not alleged that the child was within the jurisdiction of the First Judicial District of Hinds County, but it is set forth in the separation agreement and the plaintiff, Brenda Castille Hobbs, invoked the jurisdiction of this Court and this Court has jurisdiction to decide the custody of the child as well as visitation rights and in the court's best judgment the Louisiana court does not have jurisdiction and so the motion to transfer jurisdiction will be overruled.
(R. 56-57)
Following the hearing the chancellor entered an order modifying the original December 22, 1982, custody decree.
Brenda has appealed.

I.

JURISDICTION
Mississippi as well as Louisiana has adopted the Uniform Child Custody Jurisdiction Act (UCCJA). The Mississippi Legislature passed the Act in 1982, Ch. 414, Laws 1982, Miss. Code Ann. § 93-23-1, et seq., and Louisiana adopted it in 1978. La. Rev. Stat. Ann. § 13:1707, et seq.
The chancellor, no doubt relying solely upon the fact that the original custody decree had been rendered in his court, did not believe the UCCJA applied to this case. In this he was manifestly in error.
*680 The first question the chancellor should have addressed was whether Mississippi was the proper state to exercise jurisdiction under Miss. Code Ann. § 93-23-5 (Supp. 1985). Mississippi apparently was not the child's home state when William filed his petition because she had lived with her mother in Louisiana for approximately two years. There is nothing in the record to suggest there was any other basis for the chancellor to assume jurisdiction under this section.
Moreover, when a chancellor is apprised of a pending proceeding in another state, Miss. Code Ann. § 93-23-11 requires him to stay the custody proceedings and communicate with the court of the other state before assuming jurisdiction.
Merely filing a petition does not mean a court has "assumed jurisdiction" under Miss. Code Ann. § 93-23-11. Ordinarily there must be some order of the court indicating it has assumed jurisdiction following filing of a pleading. See: Owens By and Through Mosley v. Huffman, 481 So.2d 231, 243 (Miss. 1985); Vanneck v. Vanneck, 49 N.Y.2d 602, 427 N.Y.S.2d 735, 738, 404 N.E.2d 1278, 1281 (1980); Parltow v. Parltow, 37 Md. App. 191, 376 A.2d 1134, 1139 (Md. Ct. Spec. App. 1977).
It is not clear when the Louisiana court assumed jurisdiction. On December 20, 1984, the Hinds County Chancery Court granted William permission to set up a trust account for child support payments. The first time the chancellor addressed any merits in this custody dispute was January 30, 1985, and even this was limited to a hearing on William's contempt motion.
It appears from the record that the Louisiana court may not have fully adhered to Louisiana's UCCJA, although it may well have been the more appropriate forum. Louisiana was the home state of the Castille Elizabeth, and she was physically present within their court's jurisdiction. Of course, it is not the prerogative of any court of this state to question the action to be taken by a court of a sister state when it appears their courts failed comply with their own law. However, we do have authority to decline full faith and credit to a judgment of another state when their proceedings were not substantially in accord with the jurisdictional requirements of the UCCJA. See: Owens, 481 So.2d at 247.
The record does not reveal whether process was ever served upon William by the Louisiana court or whether that court was informed of the Mississippi proceedings at the time it entered its order modifying the original decree. There is also no indication in the record whether the Louisiana court held a hearing as contemplated by Owens to determine the best interest of this child.
This cause must be reversed and remanded for proceedings consistent with the UCCJA. Upon remand before considering the actions taken by the Louisiana court, the chancellor should first determine whether the Mississippi chancery court has authority to act under Miss. Code Ann. § 93-23-5 (Supp. 1985). In the event this section gives him authority to exercise jurisdiction, he must then determine which state, Mississippi or Louisiana, is the more appropriate and convenient forum under Miss. Code Ann. § 93-23-13 (Supp. 1985). And finally, even if the requirements of these two sections would otherwise be sufficiently present to give the chancery court jurisdiction, in view of the posture of this case in the Louisiana court, the chancellor under the Act is further required to determine whether any modification of the original custody decree by the chancery court is foreclosed by an order or judgment of the Louisiana court. See: Miss. Code Ann. § 93-23-11; -17; -25; -27; -29 (Supp. 1985). Because all the statutes cited are quite plain and unambiguous, there is no need for further explanation by this court.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.